**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4507

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANK JOSEPH DODGE,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:15-cr-00293-FL-1)

Submitted:  March 24, 2020                                      Decided:  June 30, 2020

Before NIEMEYER, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Quattlebaum joined.

G. Alan DuBois, Federal Public Defender, Jaclyn L. DiLauro, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After Frank Dodge pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g), the district court sentenced him to 88 months' imprisonment. In imposing this sentence, the court applied an enhancement under the Armed Career Criminal Act ("ACCA"), concluding that Dodge had at least three previous convictions for a violent felony, including numerous convictions for breaking and entering, in violation of North Carolina General Statutes § 14-54. Dodge contends that the district court erred in applying ACCA, arguing that a violation of § 14-54 does not constitute a violent felony for ACCA purposes because it sweeps more broadly than generic burglary, a qualifying felony offense enumerated in the Act. He acknowledges that generic burglary was defined in *Taylor v. United States*, 495 U.S. 575, 598 (1990), to be the "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime" and that the North Carolina breaking and entering statute uses virtually the same language, providing that "[a]ny person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished," N.C. Gen. Stat. § 14-54(a). Nonetheless, he focuses on the fact that the North Carolina statute defines the word "building" to include any "structure designed to house or secure within it any activity *or property*." *Id.* § 14-54(c) (emphasis added). Because "building" is defined to include a structure storing property, § 14-54 is, according to Dodge, broader than generic burglary and therefore its violation does not result in an ACCA predicate conviction.

While we recognize, as noted in more detail below, that Dodge makes an argument based on language from two recent Supreme Court decisions, we nonetheless are bound to

2

follow our prior decision in *United States v. Mungro*, 754 F.3d 267, 272 (4th Cir. 2014), where we held that the North Carolina breaking and entering statute "sweeps no more broadly than the generic elements of burglary" and therefore its violation qualifies as an ACCA predicate conviction. Moreover, the Supreme Court language cited by Dodge focused on whether a State's inclusion of vehicles in the text of its definition of burglary made the statute broader than the generic definition of burglary, an issue not before us today. Consistent with that, we have continued to rely on *Mungro* as binding precedent in at least 17 published and unpublished opinions decided both before and after the Supreme Court issued its opinions. In some unpublished opinions, we have even rejected the very argument that Dodge makes here. Because our holding in *Mungro* has not been superseded, we affirm.

I

The presentence report prepared for Dodge's sentencing listed as part of his criminal history seven prior felony convictions for breaking and entering, in violation of N.C. Gen. Stat. § 14-54(a). Based on these convictions, the report indicated that, pursuant to ACCA, Dodge was subject to a mandatory minimum sentence of 15 years' imprisonment.

At his sentencing hearing, Dodge argued that his prior North Carolina breaking and entering convictions did not qualify as violent felony convictions for purposes of applying ACCA's sentencing enhancement because § 14-54 criminalizes the breaking and entering into a broader range of structures than does burglary, including, for example, structures that house "property." He maintained that while our prior decision in *Mungro* held that an

offense under § 14-54(a) qualified as a violent felony for ACCA purposes, it did not explicitly analyze the scope of the definition of "building" used in the North Carolina statute or consider whether it is broader than that used in generic burglary. Dodge thus argued that *Mungro* was not controlling.

While the district court acknowledged Dodge's objection, it stated that it was obligated to follow our precedent in *Mungro*. Accordingly, it accepted the presentence report's conclusion that Dodge was subject to ACCA's 15-year mandatory minimum sentence as an armed career criminal. Nonetheless, the government filed a motion for a downward departure, and the district court sentenced Dodge to 88 months' imprisonment.

From the judgment entered on July 9, 2018, Dodge filed this appeal, challenging only the district court's application of ACCA in sentencing him.

II

In relevant part, ACCA provides that a person convicted of violating 18 U.S.C. § 922(g), who has three prior convictions for a violent felony is subject to a mandatory minimum sentence of 15 years' imprisonment. *See* 18 U.S.C. § 924(e)(1). The term "violent felony" as used in § 924(e)(1) is defined to include, among other things, "any crime punishable by imprisonment for a term exceeding one year" that "is *burglary*, arson, or extortion, [or] involves use of explosives." *Id*. § 924(e)(2)(B)(ii) (emphasis added).

In this case, the district court concluded that North Carolina breaking and entering, in violation of § 14-54, qualifies as "burglary" and that Dodge's multiple convictions under

4

that statute thus triggered application of ACCA's sentencing enhancement. It is this ruling that Dodge challenges.

To determine whether North Carolina breaking and entering under § 14-54 constitutes "burglary" as used in 18 U.S.C. § 924(e)(2)(B)(ii), we apply the categorical approach, comparing the North Carolina statute's elements with those of generic federal burglary to ascertain whether the state statute has the same elements or elements defined more narrowly than the generic federal crime. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). If the elements are the same or more narrow, a violation of the state statute qualifies as a predicate conviction under ACCA.

The Supreme Court has defined the generic crime of burglary in ACCA as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," *Taylor*, 495 U.S. at 598, and therefore, we understand the elements of generic burglary as (1) an unlawful or unprivileged entry or presence in (2) a requisite location, meaning "a building or other structure," (3) with the intent to commit a crime.

Similar to the generic federal crime, the North Carolina breaking and entering offense is committed when a person "[1] breaks or enters [2] any building [3] with intent to commit any felony or larceny therein." N.C. Gen. Stat. § 14-54(a). The North Carolina statute, however, includes a definition of "building" to mean "any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property." *Id.* § 14-54(c).

5

In *Mungro*, we compared the North Carolina breaking and entering statute with generic federal burglary and held that "N.C. Gen. Stat. § 14-54(a), as interpreted by the North Carolina Supreme Court, sweeps no more broadly than the generic elements of burglary." 754 F.3d at 272. In reaching that conclusion, however, we did not specifically consider the relative scopes of the "building" elements.

Since deciding *Mungro*, we have cited it in two published opinions without qualification. *See United States v. Mack*, 855 F.3d 581, 586 n.2 (4th Cir. 2017) (citing *Mungro* for its substantive holding that an offense under N.C. Gen. Stat. § 14-54 is an ACCA predicate); *United States v. McCollum*, 885 F.3d 300, 305 n.5 (4th Cir. 2018) (quoting *Mungro*'s description of the categorical approach). We have also relied on it in at least 15 unpublished decisions for its holding that § 14-54 constitutes generic burglary for purposes of applying ACCA's sentencing enhancement. *See United States v. Judd*, No. 19-4540, 2020 WL 1490740 (4th Cir. Mar. 27, 2020); *United States v. Davidson*, 802 F. App'x 800 (4th Cir. 2020); *United States v. Denton*, 773 F. App'x 134 (4th Cir. 2019); *United States v. Joy*, 771 F. App'x 307 (4th Cir. 2019); *United States v. Hill*, 771 F. App'x 195 (4th Cir. 2019); *United States v. Street*, 756 F. App'x 310 (4th Cir. 2019); *United States v. Beatty*, 702 F. App'x 148 (4th Cir. 2017); *United States v. Brown*, 670 F. App'x 191 (4th Cir. 2016); *United States v. Jones*, 669 F. App'x 110 (4th Cir. 2016); *United States v. Harris*, 653 F. App'x 215 (4th Cir. 2016); *United States v. Bolden*, 645 F. App'x 282 (4th Cir. 2016); *United States v. Thompson*, 615 F. App'x 160 (4th Cir. 2015); *United States v. Lockamy*, 613 F. App'x 227 (4th Cir. 2015); *United States v. Ingram*, 597 F. App'x 151 (4th Cir. 2015); *In re Whitley*, 577 F. App'x 212 (4th Cir. 2014). Notably, in at least 3 of

6

these unpublished decisions, we explicitly rejected the same "locational element" argument that Dodge makes here. *See Denton*, 773 F. App'x at 135; *Street*, 756 F. App'x at 311; *Beatty*, 702 F. App'x at 150–51; *see also United States v. Maham*, 767 F. App'x 532, 533 (4th Cir. 2019).

Dodge makes two arguments to avoid the *Mungro* line of cases. First, he correctly notes that the *Mungro* decision itself did not explicitly consider whether § 14-54(a)'s "building" element matched that of generic federal burglary. And second, he notes that since *Mungro* was decided, the Supreme Court has handed down two decisions clarifying the meaning of the term "building" — *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. Stitt*, 139 S. Ct. 399 (2018) — which, he maintains, indicate that North Carolina's definition of "building" is broader than that included in a generic burglary offense.

As to Dodge's first argument, although *Mungro* did not explicitly consider § 14-54(a)'s "building" element, we nonetheless held unequivocally that "N.C. Gen .Stat. § 14-54(a), as interpreted by the North Carolina Supreme Court, sweeps no more broadly than the generic elements of burglary" and therefore a conviction under that statute qualifies as an ACCA predicate conviction. 754 F.3d. at 272. And were we to accept Dodge's argument, we could no longer follow that holding. Yet, as a three-judge panel, we are precluded from overruling *Mungro*. *See United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court" (citation omitted)). Of course,

7

if the Supreme Court has issued a "*superseding contrary decision*," we are bound to apply it, which brings us to Dodge's second argument.

Dodge contends that the Supreme Court's decisions in *Mathis* and *Stitt* clarified the meaning of "building" for ACCA purposes and that clarification places *Mungro* in doubt. In *Mathis* — decided two years after *Mungro* — the Supreme Court addressed the "building" element of an Iowa burglary statute and reasoned that because it applied to burglary of "any building, structure, *or land, water, or air vehicle*," 136 S. Ct. at 2250 (quoting Iowa Code § 702.12 (2013)) (cleaned up), it covered a greater swath of conduct than generic federal burglary and thus could not constitute an ACCA predicate offense, *id.* at 2251. This was so because while buildings and other structures satisfy generic burglary's locational element, *vehicles* do not. *Id.* at 2250.

And in *Stitt*, the Court held that the burglary of a structure *or vehicle* qualified as generic burglary under ACCA if the state statute required that the vehicle be adapted or customarily used for overnight accommodation. 139 S. Ct. at 406–07. In so holding, the Court noted that generic burglary is a crime concerned with violent confrontations that may arise when people are present and reasoned that "[a]n offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation." *Id*. at 406. There is also explanatory language in *Stitt* suggesting, but not holding, that the locational element of generic burglary might not encompass structures intended for the storage of property rather than for occupancy:

8

In *Taylor*, for example, we referred to a Missouri breaking and entering statute that among other things criminalized breaking and entering "*any* boat or vessel, or railroad car." *Ibid.* (citing Mo. Rev. Stat. § 560.070 (1969); emphasis added). We did say that that particular provision was beyond the scope of the federal Act. But the statute used the word "any"; it referred to ordinary boats and vessels often at sea (*and railroad cars often filled with cargo, not people*), nowhere restricting its coverage, as here, to vehicles or structures customarily used or adapted for overnight accommodation. The statutes before us, by using these latter words, more clearly focus upon circumstances where burglary is likely to present a serious risk of violence.

In *Mathis*, we considered an Iowa statute that covered "any building, structure, . . . land, water or air vehicle, or similar place adapted for overnight accommodation of persons or used for the storage or safekeeping of anything of value." Iowa Code § 702.12 (2013). Courts have construed that statute to cover ordinary vehicles because they can be used for *storage or safekeeping*. *See State v. Buss*, 325 N.W.2d 384 (Iowa 1982); *Weaver v. Iowa*, 949 F.2d 1049 (9th Cir. 1991). That is presumably why, as we wrote in our opinion, "all parties agree[d]" that Iowa's burglary statute "covers more conduct than generic burglary does." *Mathis*, 136 S. Ct. at 2250.

*Id.* at 407 (cleaned up) (second and third emphases added).

Thus, Dodge argues that because no published decision of this court has explicitly resolved the question of whether the "building" element of North Carolina's breaking and entering statute is overbroad, the language from *Mathis* and *Stitt* indicates that it very well may be.

Nonetheless, as Dodge seems to acknowledge, the fact remains that neither *Mathis* nor *Stitt* is a superseding contrary decision of the Supreme Court overruling *Mungro*'s explicit holding that North Carolina breaking and entering qualifies as a violent felony for ACCA purposes. The relevant discussion in these two cases focused primarily on whether there was a distinction between "vehicles," even if used for temporary accommodation, and "buildings." *See Mathis*, 136 S. Ct. at 2250; *Stitt*, 139 S. Ct. at 406–07. And while

9

language in *Stitt* implies that generic federal burglary is concerned with violent confrontations that might arise *when people are present*, whether in buildings, structures, or vehicles, its holding was limited to the vehicle context. Moreover, both *Mathis* and *Stitt* relied on *Taylor*'s definition of generic burglary, as did we in *Mungro*, and neither purported to articulate a new test for assessing the locational element of that definition.

Thus, we are faced with prior Fourth Circuit precedent that could be read as being in tension with intervening Supreme Court reasoning but no directly applicable Supreme Court holding. In a similar situation, we have determined that we could not overturn our prior precedent where our cases post-dating the Supreme Court developments continued to rely on prior panel decisions as binding. *See United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003) (reasoning that while *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), may have "alter[ed] the legal landscape" with respect to the admissibility of certain evidence, this court's subsequent reliance on pre-*Daubert* polygraph evidence decisions established that those decisions continued to carry precedential force and thus could not be overruled by a three-judge panel). Just as in *Prince-Oyibo*, we have repeatedly treated *Mungro* as binding precedent, even after both *Mathis* and *Stitt*.

At bottom, we conclude that *Mathis* and *Stitt* do not overrule our prior holding in *Mungro* that a conviction under N.C. Gen. Stat. § 14-54(a) qualifies as an ACCA predicate conviction under 18 U.S.C. § 924(e)(2)(B)(ii). And because that holding is explicit and we have repeatedly relied on it in subsequent decisions, it governs our review in this case.

The judgment of the district court is accordingly

AFFIRMED.

10